**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**THOMAS LEE JILES**                                                                              **PLAINTIFF**

**VS.**                                                            **CIVIL ACTION NO.: 3:19cv672-LRA**

**MARTIN PACE; LINDA PUGH; DOUGLAS**
**HADAD; BILLY JOE HEGGINS; and**
**WARREN COUNTY, MISSISSIPPI**                                             **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter came before the Court on the Motion for Summary Judgment for Failure to

Exhaust Administrative Remedies (Doc. #60) filed by the Defendants in this matter.  Thomas

Lee Jiles sued the Defendants about conditions at the Warren County Jail, where he was

incarcerated from April 16 or 17, 2018, to May 23, 2018, and from February or March, 2019 to

June 5, 2019.  According to Jiles, the conditions at the Jail were unacceptably filthy, and he

contracted MRSA while he was there.  Jiles alleges that he received no medical care during the

time that he was there, although he requested care numerous times.

The background of this case is identical to that of *Jiles v. Grady*, *et al.*, 3:19cv697, in

which this Court recently entered an opinion.  On April 14, 2016, Jiles was given conditional

probation for his ten-year sentence for a 2013 Yazoo County conviction for Uttering Forgery.

By April 3, 2018, the Mississippi Department of Corrections issued a warrant for his arrest,

charging him with violating the conditions of his parole by failing to report to his Probation

Officer and for leaving his known residence and failing to report the new one.

On April 17, 2018, Jiles was arrested by Vicksburg Police on a charge of Strong Arm

Robbery.  Since that time, he has filed numerous pleadings in this case and the earlier case,

seeking compensation and his release from prison on various constitutional claims.

Here, the Defendants have moved for summary judgment on grounds that Jiles failed to exhaust the administrative remedies that were available to him at the Warren County Jail.  In support of their Motion, they have attached an Affidavit from Linda Pugh, the Jail Administrator.  According to Ms. Pugh, there was an ARP program in place in Warren County, and she has provided an Inmate Handbook that describes the program.  Pugh avers that Jiles did not file a grievance while he was incarcerated in Warren County.  Finally, Pugh states, "Inmates are given an opportunity to read a copy of the inmate handbook upon their arrival at the WCJ [Warren County Jail] which notifies them of the facility grievance procedure."  There is no indication that Jiles was given a copy of the handbook or that he was, specifically, made aware of it.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the moving party's evidence and all factual inferences from that evidence in a light most favorable to the party opposing summary judgment. *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).  Once the moving party has presented sufficient evidence that no genuine issue of material fact exists, the party opposing summary judgment has the burden of showing that a genuine issue of material fact remains. *Matsushita v. Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (5th Cir. 1986).  The non-moving party must do more than present a simple general denial, but must respond "by affidavit or as otherwise provided in th[e] rule, [and] must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).

During the omnibus hearing held earlier in this case, Jiles testified that he made numerous oral requests to meet with jail officials about the conditions in Warren County.  "We

tried our hardest to get these folks to come and see about us.  They would not come to the back

of the jail."  (Tr. 47) Counsel for the Defendants asked him whether he had filed a sick call

request, and he answered, "That's what we was trying to get them to bring us, a form to file a

grievance.  They never brought us nary."  (Tr. 51)  When counsel repeated the question, Jiles

testified, "Ma'am, I already stated I didn't know nothing about no – I didn't know nothing about

a request.  If we were going to file one, she supposed to give it to them to bring to us.  She didn't

offer nary because they didn't have nary.  Far as I'm concerned, it wasn't nary there."  (Tr. 52)

Later, Jiles repeated, "I didn't file nothing.  I didn't even know there was nothing to file."  (Tr.

55).  Counsel tried again, "But do you know about the ARP system?"  Jiles said, "That's in

prison system.  They didn't have an ARP system.  I know they didn't have nary.  We know they

didn't have nary.  They know they didn't have nary."  (Tr. 55)

Under the Prison Litigation Reform Act (PLRA): "No action shall be brought with

respect to prison ... by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The

Supreme Court has made it clear that exhaustion is an absolute prerequisite and that the

administrative remedies should be invoked in a timely manner and pursued to their conclusion.

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  The petitioner must have "pursue[d] the grievance

remedy to conclusion"—substantial compliance with administrative procedures is not enough.

*Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001).

In *Woodford*, the Court dismissed an untimely claim as unexhausted, holding

"Exhaustion is no longer left to the discretion of the district court, but is mandatory." Id. at 85.

The exhaustion requirement of the PLRA attempts to reduce federal interference with the

administration of state prisons.  To that end, it seeks to give prison officials time and opportunity

to address complaints internally.  In a later case, the Court instructed, "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The Court stated, "All agree that no unexhausted claim may be considered." *Id*. at 219–20.

Jiles testified that he did not know about Warren County's administrative remedy program.  This contention is contradicted his claim that he requested "a form to file a grievance." Ignorance of the exhaustion requirement, however, or the procedure for seeking a remedy, does not ordinarily excuse the failure to exhaust.  *McCray v. Fryer*, No. 11-1349, 2014 WL 4354537 at *3 (W.D. La. Sept. 2, 2014), citing *Gonzalez v. Crawford*, 419 F. App'x 522, 523 (5th Cir. 2011) ("[A]lleged ignorance of the exhaustion requirement, or the fact that [the prisoner] might have misconstrued the language in the handbook, does not excuse his failure to exhaust."); *Simkins v. Bridges*, 350 F. App'x 952, 953 (5th Cir. 2009).  The requirement of exhaustion is statutory and is absolute under the law.  42 U.S.C. § 1997.  Unlike a judge-made exception, under the statute, this Court has no authority to review a claim that was not properly exhausted.

Although Congress has statutorily mandated exhaustion, the statute itself provides an exception.  Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies.  Inmates are required to exhaust the remedies that are available to them, but there is no exhaustion requirement where the remedies are unavailable.  *Ross v. Blake,* 136 S. Ct. 1850, 1859 (2016).  An administrative remedy is not "available" if prison officials prevent an inmate from learning about it.   An administrative remedy may also be unavailable where prison officials are unable or unwilling to provide relief; where the scheme is "so opaque that it becomes, practically speaking, incapable of use" by an ordinary prisoner, or "prison administrators 'thwart inmates from taking advantage of a grievance process through

machination, misrepresentation, or intimidation.'" *Brantner v. Freestone Cty Sheriff's Office,* 776 F. App'x 829, 833 (5th Cir. 2019) (quoting *Ross,* 136 S. Ct. 1859-60). The resolution of whether the process is "available" may turn on questions of fact. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). Even though the Fifth Circuit requires "strict compliance" with a facility's grievance process, it has "long recognized the importance of ensuring that inmates have avenues for discovering the procedural rules governing their grievances . . . ." *Id.* at 268. In that vein, the Fifth Circuit has held that "[i]f the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson*, 75 F. App'x 295, 296 (5th Cir. 2003) (per curiam, unpublished) (reversing dismissal of prisoner complaint for failure to exhaust because prisoner alleged that prison officials refused his requests for grievance forms); *see also Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (citing *Aceves* with approval for this rule).

Here, Jiles complains that he requested grievance forms on several occasions, and they were not provided to him. The Defendants offer no response or rebuttal to this claim. In light of this evidence, the undersigned is unwilling to hold that the Warren County Jail's administrative procedure system was "available" to Jiles. *Brantner*, 776 F. App'x at 834 (exhaustion may be excused where prisoner was told that he would be given grievance forms, but, despite his requests, they were never provided."). Moreover, as has been demonstrated in this Court, Jiles is not reluctant to submit document after document arguing his claims, even where they all say basically the same thing. As he has been such a prolific writer in this Court, it is conceivable that he would have been equally aggressive at the Warren County Jail, had he known that a grievance system exists.

Thus, while it is undisputed that Jiles did not submit a grievance form about the conditions at the Warren County Jail, seen in the light most favorable to him, his testimony creates a question of fact as to whether Warren County's grievance system was available to him during his stay there.  At this juncture, the undersigned cannot assess the credibility or legitimacy of the competent summary judgment evidence. See *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

This being the case, the undersigned is of the opinion that the Defendants' Motion for Summary Judgment should be denied.  It is important, however, to explain what claim(s) are still viable.  Jiles's claims relative to the conditions at the Warren County Jail have survived this Motion.  However, for the reasons earlier outlined in Jiles's case against the Vicksburg Police, the claims relative to his conviction and sentence are not appropriate for consideration in this case.

Jiles alleges that he was unconstitutionally detained, denying his right to Due Process rights under the Constitution of the United States and his Sixth Amendment right to a speedy trial.  He insists that this Court should free him from this illegal detention; however, this is beyond the power of a federal court in a lawsuit based upon 42 U.S.C. § 1983.  If a prisoner seeks to recover damages in a § 1983 action for being unlawfully confined, he must first show that his confinement was illegal.  To do that, he has to do more than just argue to the court that there was some error in his conviction; instead, he has to show that his criminal proceedings have been terminated in his favor in state court.  Jiles's confinement was the result of a state court charge of armed robbery, to which he pleaded guilty and also a probation violation related

to another state court charge.  For this Court to award Jiles relief because there was an issue with

his confinement would mean that this Court found fault with his conviction.  This Court has no

authority to make that decision in a § 1983 action unless the conviction was overturned.

This "favorable termination rule" was established by the United States Supreme

Court, as follows:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by action whose
> unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff
> must prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal authorized to
> make such determination, or called into question by a federal court's issuance of a
> writ of habeas corpus.  28 U.S.C. § 2254.

*Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  A Due Process claim is an attack on the

underlying conviction that implicates *Heck*.  *McDonough v. Smith,* ___ U.S. ___, 139 S. Ct.

2149, 2155 (2019).  A claim that the Sixth Amendment right to a speedy trial was violated is also

an attack on the conviction and must be dismissed under the principals announced in *Heck*.

*Mount v. Wakefield*, 783 F. App'x 280-1 (5th Cir. 2018).

Thus, when a prisoner challenges the validity of his confinement, his sole federal remedy

is a writ of habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Before Jiles can file

a writ in federal court, however, he must have exhausted his state remedies; in other words, he

must seek a reversal of his conviction in state court.  That is where he was convicted, his

incarceration is the result of state court charges, and that is where he must attack his conviction.

His due process and speedy trial claims must begin there.  Jiles may ultimately return to federal

court by way of a habeas petition after his state court proceedings are exhausted.  However,

unless and until Jiles's conviction has been overturned, this Court cannot declare that his

confinement was unlawful, and he has no cause of action under § 1983.  *Heck*, 512 U.S. at 489.

IT IS, THEREFORE ORDERED that the Motion for Summary Judgment [Doc. #60] filed by the Defendants is denied.  Jiles's claims regarding the conditions at the Warren County Jail may proceed; however, for the reasons explained above, those are the only claims that can be considered by this Court.  There are numerous other motions pending in this matter.  The Court is of the opinion that the resolution of this Motion, together with the explanation regarding the claim that remains available to Jiles, adequately disposes of these Motions, and they will be denied.  A list of those Motions follows:

Doc. #77 Motion for Settlement;

Doc. #79 Motion for Writ of Habeas Corpus;

Doc. #82 Motion for Supplemental Response;

Doc. #92 Motion to Supplement;

Doc. #98 Motion for Leave to Amend;

Doc. #99 Motion to Dismiss Defendants' Motion for Summary Judgment; and

Doc. #105 Motion for a Hearing.

IT IS SO ORDERED, this the 30th day of December, 2020.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE